UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

FILED
JAMES BONINI
CLERK

04 FEB 17 PM 12: 38

| | | |
|---|---|---|
| DANA GOINS, pro se | : | Case No. C-01-185 |
| Petitioner | : | Judge Weber |
| —vs— | : | Magistrate Judge Sherman |
| SAMUEL TAMBI, Warden | : | **ADDENDUM TO MOTION FOR REOPENING OF PETITION FOR HABEAS CORPUS** |
| Respondent | : | |

NOW COMES Dana Goins, Petitioner, pro se, who respectfully asks this Court
to accept his Addendum (Supplement) to a previous filed Motion to Reopen his
Petition for Habeas Corpus that was filed by this Court on January 16, 2004.
No decision has been rendered as of yet, therefore, Petitioner prays that the
Court will take a newly discovered case of law for consideration in reopening
his petition. This case, UNITED STATES OF AMERICA ex rel. Elliot THURMOND, Peti-
tioner, v. Vincent R. MANCUSI, Warden, Respondent, No. 67 C 526, 275 F.Supp 508;
1967 U.S. Dist. LEXIS 8626, was decided by the UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK, and will offer further proof that Petitioner
Goins was denied the right to due process and equal protection of the law when his
Petition for Habeas Corpus was denied. The THURMOND case along with WOLFE, should
set aside any doubts that Petitioner Goins' Habeas Corpus petition must be allowed
to go forward.

Respectfully submitted,

Dana Goins, pro se
373-041
Hocking Correctional Facility
Box 59
Nelsonville, Ohio  45764

## ADDENDUM

In THURMOND, the United States District Court for the Eastern District of New York decided that the only way to adequately protect petitioner's rights is to vacate the judgment of conviction and allow him time to appeal which would be measured from the rendition of a new judgment.

In Thurmond, he had written the sentencing judge informing him that his lawyer had promised him that he would receive probation if he would plead guilty to the sale of marijuana. Instead, he received a term of two and one-half to five years imprisonment. In response to the letter, the Chief Law Assistant of the Nassau County Court informing him that nothing could be done and that there were no provisions in the law permitting a judge of the Court to commute or otherwise suspend a properly imposed sentence during its term once the prisoner has commenced actual service of the sentence.

The District Court ruled, "...the statement of the Chief Law Assistant that 'we can do nothing further in this matter,' might well have been understood by a layman to mean that no avenue of attacking the sentence was then open."

When Petitioner Goins received the letter from his attorney (see Exhibit A in previously filed motion), stating that he did not have any basis for an appeal and that his only remedy available from the Court is the filing of a motion for judicial release, that letter was equivalent to the letter that THURMOND received from the Chief Law Assistant and led Goins to believe that he had "no avenue of attacking the sentence." Counsel's letter to Petitioner Goins was somewhat misleading as Ohio has construed Rule 32.1 of its Code of Criminal Procedure which permits a defendant to withdraw a plea of guilty to correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

The Court must examine the data available to the defendant's mind and take into account the natural strains and anxieties of a person in the defendant's position. While a defendant's surprise at the "severity of the sentence" will not itself invalidate a plea (United States v Shneer, 194 F.2d 598, 600 (3d Cir. 1952), it may be evidence of defendant's belief as to what he was promised in return for his plea.

Although not, perhaps, of constitutional significance, the Court should not ignore the fact that it is as embottering to a defendant – and as destructive of possible rehabilitation – for him to falsely conclude that he was misled as it is for him to reach that conclusion correctly. Certainly, no procedure can prevent many defendants from believing that they were unfairly treated. Whatever the circumstances, many of them, brooding in their cells, will ultimately be convinced of their own purity and the impropriety of society in dealing with them. But it is not too much to expect that society will so design its criminal procedures to be fair to the defendant.

The heart of the matter was whether petitioner was denied effective assistance of counsel at or immediately following sentence. Cf. United States ex rel. Maselli v. Reincke, 261 F.Supp. 457 (D.Conn.1966, aff'd, 383 F.2d 129 (2d Cir. 1967) (failure of counsel to advise defendant of right to appeal.) This question is particularly serious in view of the questionable legal advice purportedly given by a County Court official immediately following sentencing.

The THURMOND court found that he was denied his right to appeal from the judgment of conviction because 1) Counsel stated that he did not advise petitioner with respect to the right of appeal, and 2) the letter received from the Chief Law Assistant was reasonable interpreted by him as foreclosing further procedures attacking the sentence. In the instant case of Petitioner Goins, there can be no question as to the fact that counsel did not advise him of his right to appeal; the letter offers proof of that and could also be interpreted as foreclosing further procedures for attacking the sentence that was imposed.

There must be a growing awareness of the need for adequate representation for criminal defendants immediately after trial. This problem was posed by experienced appellate counsel for New York City's Legal Aid Society:

> "I think we all recognize that men have trial counsel, men have appellate counsel. But what happens in between? A man is convicted * * * he has ten days within which to file a notice of appeal and if he doesn't do it, he never will be in a position where he can get appellate counsel. The present practice * * * in most districts is that when a trial counsel, if he is retained, loses his case and there is no fee to be had for an appeal, he leaves his client. * * * during this * * * critical period many defendants are unrepresented, receive no advice about how to proceed further, or how to protect their rights. This, I think, is one of the more serious and glaring omissions in the present practice and present law on the question of representation of defendants, and this applies equally to indigent or non-indigent defendants." 36 F.R.D. 116, 153-154 (1965) (statement of Leon Polsky in a panel discussion held at the 1964 Judicial Conference of the Second Circuit).

The sensitivity to the problem has been reflected in three decided cases, which, when read together, lead to the conclusion that the failure on the part of trial counsel in the present case to inform his client of his right to appeal violates the 6th and 14th Amendments. See United States ex rel. Maselli v Reincke, 261 F. Supp. 457, 460 (D.Conn.1966), aff'd, 383 F.2d 129 (2d Cir.1967) (defendnat informed counsel he wanted to appeal, but counsel failed to do so and neglected to inform defendant that the state would appoint counsel to assist him; "loss of defendant's right of appeal caused by conduct of his counsel may constitute a deprivation of constitutional due process."); Wynn v Page, 369 F.2d 930 (10th Cir.1966); Fox v State of North Carolina, 266 F.Supp. 19 (E.D.N.Car.1967) (counsel discussed possible appeal with defendant but failed to inform him of statutory time limit for filing notice of appeal); Amer-

ican Bar Assiciation Project on Minimum Standards of Criminal Justice, Appellate
Review of Sentences, Standard 2.2(b)(i)(1967)(advice on right to appeal); Note, 78
Harv.L.Rev. 1434, 1447 (1965); cf., Court Rules, New York Supreme Court Appellate
Division, Second Judicial Department, Rule III(a)(1967) ("upon conviction in the trial
court ... written notice to his client advising him of right to appeal and requesting
his written instructions as to whether he desires to take an appeal").

On Wynn v Page, a case much like petitioner's, the court described the facts as follows:

> "With the help of a friend, appellant retained his own counsel for trial.
> Appellant did not see his counsel after the verdict was returned and judg-
> ment and sentence imposed ... No one, not even his attorney advised appel-
> lant of his right to appeal the conviction and sentence ... and of proper
> appellate procedure. It appears that appellant's attorney was of the opin-
> ion that no reversible error occurred during the trial and there was no
> discussion after the trial between counsel and appellant concerning appeal."
> 369 F.2d at 932.

Under such circumstances, the court held that appellant's fundamental right to assistance
of counsel concerning his right to appeal was not adequate,y safeguarded." 369 F.2d at
932-933. In the present case of Petitioner Goins, a similar conclusion is warranted.

That Goins was unaware of his right to appeal is highly probable. First, it is not
likely that a layman would know that, after pleading guilty, an appeal would lie on the
ground that the sentence imposed was excessive. Second, the trial court never informed
petitioner of his right to appeal. Third, even if the court had advised petitioner of
a right to appeal, from the letter that counsel sent to petitioner, he made the deci-
sion for him not to appeal. This is contrary to the ruling in Wolfe v Randle, "The author-
ity to pursue an appeal, even one following a guolty plea, is the defendnat's alone.
The decision to appeal is not the determination of a defendant's lawyer." Fourth, peti-
tioner never saw counsel after sentence was imposed. Fifth, Goins was affirmatively mis-
led by the letter of his attorney to conclude that no means of attacking the sentence
were available in the state courts.

Were a court to speculate concerning the possibilities of a successful motion or
appeal as being poor would be in error as the chances of success are not relevant in
the proceeding unless the questions before the state courts would hae been frivolous.
On the record, no Court could say that the state courts would have considered them
frivolous in the present case of Goins. Accordingly, this Court must find that Goins
was denied his constitutional rights to representation and to appeal.

REMEDY

The time to appeal has long since expired. Since petitioner took no steps to perfect an appeal, Ohio Courts have held that they lack power to permit an appeal. The only way to now adequately protect petitioner's rights would be to vacate the judgment of conviction. A new sentence can be imposed and time to appeal measured from the fendition of a new judgment.

Respectfully submitted,

Dana Goins, pro se
373-041
Hocking Correctional Facility
Box 59
Nelsonville, Ohio  45764

PROOF OF SERVICE

I hereby certify that a copy of the foregoing ADDENDUM TO MOTION FOR REOPENING OF PETITION FOR HABEAS CORPUS has been sent by regular U.S. Mail to the Attorney General's Office, 140 East Town Street, 14th Floor, Columbus, Ohio, 43214-6001, on this 10th day of February, 2004.

Dana Goins, pro se
373-041