<u>MEMORANDUM IN SUPPORT</u>

Petitioner Goins ("Goins") has discovered a recently decided case, <u>WOLFE v</u> <u>RANDLE</u>, 267 F.Supp.2d 743 (S.D. Ohio 2003), that was decided on March 27, 2003, by this Honorable Court; therefore, since it was this Court that decided Wolfe, it must make the same decision in the case of Goins now that a precedent has been made. Wolfe and Goins are essentially the same cases. In fact, they are so similar that other than the respective dates and charges, the names of the Petitioners could be interchanged. One case is a mirror of the other. This case could not have been used as a reference since it wasn't decided until well after Goins had filed his Petition for Habeas Corpus. Now that it has been decided and that decision was to permit Wolfe's Habeas Corpus petition, that same decision must be given to Goins to ensure equal protection of the law which is guaranteed by the Fifth Amendment of the U.S. Constitution.

To simplify matters so that this Court will be able to make the comparison in each case, Goins will submit relevant sections of each case with the name of each petitioner (Wolfe or Goins) as a heading to each section. This way, the court will be able to see the similarities.

## CASE SUMMARY

**WOLFE**—PROCEDURAL POSTURE

Petitioner pled guilty to involuntary manslaughter and aggravated burglary and did not attempt to appeal his convictions until almost four years later when he sought leave to file a delayed appeal. The Ohio Court of Appeals denied his request. The Ohio Supreme Court dismissed the appeal. Petitioner filed a writ of habeas corpus. A magistrate judge issued a report and recommendation to which the State of Ohio, inter alia, filed an objection.

**GOINS**—

Petitioner pled guilty to 1 count of bribery, one count of corruption of a minor, one count of using a minor in nudity material and one count of compelling prostitution and did not attempt to appeal his convictions until almost fifteen months later when he sought leave to file a delayed appeal. The Ohio Court of Appeals denied his request. The Ohio Supreme Court dismissed the appeal. Petitioner filed a writ of habeas corpus. A magistrate judge issued a report and recommendation to which the State of Ohio, inter alia, filed an objection.

**WOLFE** OVERVIEW

Petitioner contended he was never informed of his right to appeal, either by the court or his counsel. The magistrate recommended that petitioner's grounds be dismissed as time-barred. The court adopted the magistrate's report and recommendation. The State provided a transcript of the plea and sentencing proceedings...which did not indicate that petitioner may have been aware of his right to appeal and did not

indicate that petitioner may have been aware of his right to appeal from prior con-
tacts with the judicial system. Precedent mandated that due process was violated
when defendant was not informed of his right to appeal by the trial court or his
counsel. The Ohio Court of Appeals decision denying petitioner's claim was there-
fore an unreasonable application of clearly established precedent. The doctrine of
laches was inapplicable because petitioner's delay was not unreasonable or rooted
in his negligence.

## GOINS

Petitioner contended he was never informed of his right to appeal, either by the
court or his counsel. The magistrate recommended that petitioner's grounds be dis-
missed as time-barred. The court adopted the magistrate's report and recommendation.
The State **refused to provide** a transcript of the plea and sentencing proceedings...
even after filing numerous motions by Goins trying to obtain those documents. A
precipe was filed directing the Clerk of Courts to provide a copy of the sentencing
hearing transcripts but this directive was not complied with. Without those import-
ant documents, the record would have to be considered void of the court advising
Goins of his right to appeal or to show that he was aware of his right to appeal from
prior contacts with the judicial system. Precedent mandated that due process was
violated when defendant was not informed of his right to appeal by the trial court
or his counsel. The Ohio Court of Appeals decision denying petitioner's claim was
therefore an unreasonable application of clearly established precedent. The doctrine
of laches would be inapplicable because petitioner's delay was not unreasonable or
rooted in his negligence.

## CORE TERMS FOR WOLFE AND GOINS-

right to appeal, indigent, delayed, recommendation, inform, guilty plea, ineffect-
ive assistance of counsel, diligence, notice, pro se, recommended, convicted, sentence,
limitation perio , leave to file, pled guilty, correctly, duty, advise, right to
effective assistance, constitutional requirement, constitutional question, consti-
tutional right, jurisdiction to hear, failure to exercize, evidence preseented, fact-
ual predicate, failure to inform, notice of appeal, right to counsel

## CORE CONCEPTS

Due process is offended when a defendant who pled guilty is kept completely ignorant
of his appellate rights. An indigent defendant is entitled to a transcript in order to
pursue an appeal. Indigent defendants have a right to counsel on their first appeal
and all defendants have the right to effective assistance of appellate counsel. The
right of notice is more fundamental than the rights previously guaranteed by the United
States Supreme Court. Precedent therefore dictates that failure to inform an indigent
defendant of their appellate rights violates due process. Due process rights are impli-
cated when a delayed appeal is the result of a lower court's failure to ensure that an
indigent defendant's  appellate rights are protected.

When evaluating an application for a writ of habeas corpus following a judgment of
a state court, the federal court may grant relief only if the adjudication was
(1) contrary to, or involved an unreasonable application, of clearly established fed-
eral law as determined by the United States Supreme Court, or (2) based on an unreason-
able determination of the facts in light of the evidence presented in the state court
proceedings. 28 U.S.C.S. § 2254(d).  If a state court does not articulate the reason-
ing behind its decision or fails to address the constitutional issues, the federal
court must look at the state court's decision and conduct an independent inquiry into
whether the state court reached a decision contrary to clearly established federal law

or based its decision on an unreasonable determination of the facts in light of the evidence presented. The review is deferential to the state court's determination.

The Constitution is violated if a convicted defendant is not given the right to appeal by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel. The defendant has ultimate authority in making certain fundamental determinations pertaining to his case, including the right to appeal. The authority to pursue an appeal, even one following a guilty plea, is **the defendant's alone. The decision to appeal is not the determination of a defendant's lawyer**. In order to make such a decision, the defendant must have knowledge about the appeals options available to him.

In order to be properly informed, a defendant **must be told of his right to appeal, the procedures and time limits involved in proceeding with that appeal, and the right to have the assistance of appointed counsel for that appeal.**

## BACKGROUND OF THE CASE OF GOINS-

Petitioner Dana Goins, an inmate at Hocking Correctional Facility (HCF), in Nelsonville, Ohio, was convicted February 1, 1999, after pleading guilty to bribery, compelling prostitution, using a minor in nudity oriented material and corruption of a minor. The trial court sentenced Petitioner to consecutive prison sentences totalling fifteen (15) years.

Petitioner did not attempt to appeal or otherwise challenge his conviction until May 8, 2000, when he filed pro se a motion for leave to file a delayed appeal to the Ohio Court of Appeals, Twelfth Appellate District, pursuant to Ohio R.App P. 5. Petitioner asserted that he was unaware and was not informed by either the court or his counsel that he could pursue his appeal pro se. Petitioner asserted several grounds upon which he intended to pursue his claim if his appeal was permitted to go forward. The Ohio Court of Appeals issued an Entry overruling Petitioner's motion for leave to file a delayed appeal on June 20, 2000. On July 15, 2000, Petitioner filed a notice of appeal and memorandum in support of jurisdiction to the Ohio Supreme Court. Petitioner alleged that he was not advised by the court or his counsel of his right to appeal his conviction or that he could pursue a pro se appeal. He argued that his indigent status denied him meaningful access to the appellate system. On December 12, 2000, the Ohio Supreme Court entered an order denying jurisdiction to hear the case and dismissed the appeal on the grounds that it did not involve a substantial constitutional question.

On March 26, 2001, Petitioner filed a Petition for Habeas Corpus and asserted numerous grounds for relief. Respondent filed a motion to dismiss on statute of limitation grounds arguing that Goins' petition was barred from review by the one-year statute of limitations set forth in 28 U.S.C. Sec. 2244(d), as amended by Sec. 101

of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. On August 6, 2002, the Magistrate Judge recommended that Respondent's motion to dismiss be GRANTED, and petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 be DISMISSED with prejudice on the ground that it is barred from review under the one-year statute of limitations set forth in 28 U.S.C. Sec. 2244(d). The Magistrate Judge further recommended that "a certificate appealability should not issue because 'jurists of reason would not find it debatable whether this Court is correct in its procedural ruling' as required under the first prong of the two-part standard enunciated in SLACK v McDANIEL, 529 U.S. 473, 484-85 (2002), which is applicable to this case because petitioner's claims for relief have been found to be barred from review on procedural grounds. On October 25, 2002, this Court adopted the Magistrate Judge's Report and Recommendation.

On July 2, 2002, the Magistrate Judge issued an order directing Respondent to expand the record with additional information on what motions had been filed by Petitioner. In response to the Court's Order, Respondent provided all documents pertaining to the case of Goins except a transcript of the plea and sentencing prodeedings.

In Respondent's Reort and Recommendation, he stated "Petitioner claims that he was misinformed by his attorney of his right to appeal. Whether true or not, error of an attorney is not a basis for equitable tolling." Furthermore, the Magistrate Judge stated that "The remedy for negligence by a party's lawyer is generally a legal malpractice suit or an ineffective assistance of counsel claim, not forcing the opposing party to defend against a stale claim." In addition, the Magistrate claimed that "the record shows petitioner was advised of his right to appeal orally at sentencing and by writing when he entered his guilty plea." Goins respectfully argues that without a transcript of the plea and sentencing proceedings, it would be irrational and inconceivable as to how the Magistrate manufactured his conclusion in determining that judgment. Goins is attaching a letter that he received from his attorney in response to a letter that he had written asking about an appeal. Counsel had mentioned to Goins, after he was sentenced, that he would visit him in the county jail to discuss an appeal with him, but Goins was transferred to the prison's reception center on April 2, 1999, before counsel was able to visit him to discuss an appeal. Immediately upon arrival at the prison's reception center, Goins sent counsel a letter asking him to file an appeal on his behalf. In return, Goins received the attached letter. (Exh. A).

The Magistrate summed his Report and Recommendation by stating "the Court concludes that petitioner's federal habeas corpus petition is barred by the one-year statute of limitations," and recommended that petitioner's petiton for writ of habeas corpus pursuant to 28 U.S.C. ß 2254 be dismissed with prejudice as time-barred.

Even the RESPONDENT'S MOTION TO DISMISS FOR FAILURE TO COMPLY WITH THE HABEAS STATUTE OF LIMITATIONS, 28 U.S.C. ß2244(d) stated that the petition should be dismissed as untimely. There were no arguments concerning the grounds that Goins had given for his petition. That was a wrongful accusation, pursuant to Wolfe.

On October 25, 2002, Judge Weber accepted the Magistrate Judge's recommendation and dismissed the petition on the grounds that it was time barred.

In further research of legalwork of Goins, he was able to come upon the transcripts of the plea hearing that the respondent furnished on an order from the Magistrate Judge to EXPAND THE RECORD. These plea hearing transcripts are being included in this instant motion. Nowhere in the transcripts will this court find where Goins was advised orally by the sentencing court of his right to appeal. (Exhibit B). There has never been any transcripts furnished of the sentencing hearing; therefore, the record is devoid of any proof that Goins was advised of his right to appeal, the time limits and that counsel would be provided. The only time an appeal was mentioned was after the sentence was imposed and counsel whispered to Goins (off the record) that he would visit him in the county jail to discuss an appeal. But that never transpired.

## DISCUSSION

Petitioner based his writ for habeas corpus on the claim that he was denied his right to appeal because his attorney and the trial court failed his of such right or the right to have appellate counsel appointed to him. In a Report and Recommendation dated August 6, 2002, the Magistrate Judge recommended that this Court dismiss with prejudice petitioner's writ.

Goins attacked the Judge's Report and Recommendation mainly on the ground that since he did not have a first right of appeal and attempted to proceed thru the Delayed Appeal process, that his one-year statute of limitations shoud not begin to run until judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. In Wolfe, he filed a Notice of Appeal and Memorandum in Support of Jurisdiction alleging that he was not advised by the court or his counsel of his right to appeal his conviction. That motion was denied on December 22, 1999, which would have when his claim became final. He subsequently filed his Petition for Habeas Corpus on May 3, 2000, which this Court ruled was filed well before December 22, 2000, which would be one year after the Ohio Supreme Court denied his appeal.

In Goins, he filed his appeal into the Ohio Supreme Court on July 15, 2000. It was denied by that court on December 20, 2000. Subsequently, Goins filed his Petition for Habeas Corpus on March 3, 2001, which would be well before December 20, 2001. The basic principles lies in both cases; therefore, the same decision must be given to Goins as was given to Wolfe by this court.

In the appeal of Goins, he also argues that he was denied equal protection of the

law because he was unaware of his right to appeal and was not informed of this right to appeal and was not informed of this right by either his court-appointed counsel or the trial court. (Exh. B). To further prejudice Goins, his attorney sent him a letter stating that he could not appeal. (Exh. A).

As the respondent did in Wolfe, the respondent in Goins also alleges that he procedurally defaulted by his failure to file a timely notice of appeal. Respondent's sole argument was that "Petitioner's conviction became final upon the expiration of time to seek direct review. 28 U.S.C. ß2244(d))1)(A). That date was thirty (30) days from the latest entry of conviction, March 29, 1999 (date of sentencing) until April 28, 1999.

Due process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights. Cf. Peguero v U.S., 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18; White v Johnson, 180 F.3d 648, 652 (5th Cir.1999). The Supreme Court has addressed the procedural requirements for indigent defendants in the appellate process on several occasions. In Griffin v Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Court held that an indigent defendant is entitled to a transcript in order to pursue an appeal. The Court later held that indigent defendants also had a right to counsel on their first appeal, Douglas v California, 372 U.S. 353, 365-67, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and that all defendants have the right to effective assistance of counsel, Evitts v Lucey, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The right of notice is more fundamental than the rights previously guaranteed by the Supreme Court. Precedent therefore dictates that failure to inform an indigent defendant of their appellate rights violates due process. Due process rights are implicated when a delayed appeal is the result of a lower court's failure to ensure that an indigent defendant's appellate rights are protected.

If a state court does not articulate the reasoning behind its decision or fails to address the constitutional issues, the federal court must look at the state court's decision and conduct an independent inquiry into whether the state court reached a decision contrary to clearly established federal law or based its decision on an unreasonable determination of the facts in light of the evidence presented. Schoenberger v Russell, 290 F.3d 831, 835 (6th Cir.2002); Harris v Stovall, 212 F.3d 940, 943 & n. 1 (6th Cir.2000). The review is deferential to the state court's determination. Id.

In the present case, the Ohio Court of Appeals summarily denied Petitioner's motion for a delayed appeal, and the Ohio Supreme Court declined jurisdiction to hear an appeal on that ruling. Since there is no court decision to evaluate in light of 28 U.S.C. ß2254, this Court must conduct its own deferentail review.

In conducting that review, this court should see that the Constitution is violated if a convicted defendant is not given the right to appeal "by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of

his right to appeal with the aid of counsel." <u>Jacobs v Mohr</u>, 265 F.3d 407, 419 (6th Cir.2001) (citing <u>Goodwin v Cardwell</u>, 432 F.2d 521, 522-23 (6th Cir.1970). The defendant has ultimate authority in making certain fundamental determinations pertaining to his case, including the right to appeal. <u>Jones v Barnes</u>, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The authority to pursue an appeal, even one following a guilty plea, is the defendant's alone. <u>Marrow v United States</u>, 772 F.2d 525, 530 (9th Cir.1985). The decision to appeal is not the determination of defendant's lawyer. Id. In order to make such a decision, the defendant must have knowledge about the appeals options available to him. <u>United States ex rel. Smith v McMann</u>, 417 F.2d 648, 654 (2dCir,1969). <u>Douglas v California</u> imposes on a state "a duty to warn every person convicted of a crime of his right to appeal."  The right to appeal at the expense of the state is a mere illusion if the convicted indigent defendant does not know such a right exists.

Finding that "in the absence of evidence in the record upon which it could be determined that an indigent convicted defendant knowlingly and intelligently waived his right of direct appeal...it was error for the Court of Appeals to dismiss the motion for leave to appeal without making such a factual determination, <u>State v Sims</u>, 27 Ohio St.2d 79, 272 NE2d 87, 91 (1971).

In order to be properly informed, a defendant must be told of his right to appeal, the procedures and time limits involved in proceeding with that appeal and the right to have the assistance of appointed counsel for that appeal. <u>White</u>, 180 F.3d at 652 (5th Cir.1999), <u>Norris v Wainwright</u>, 588 F.2d 130, 135 (5th Cir.) and the one way to make sure that he does know is to tell him so, <u>Sims</u> at 90. This case centers on the complete failure of the court or counsel to inform Petitioner of his right to appeal.

Petitoner, along with the letter from counsel, is also including his sworn declaration that neither his counsel or the trial court advised him of his appellate right and he did not learn that he could file a delayed appeal until he arrived at Hocking Correctional Facility in January, 2000, after spending approximately eight (8) months at the prison's reception center where movement was limited thus taking away any chances of visiting the law library. Once at this facility, Goins was able to visit the law library where he was able to do research and was informed by unmate law clerks that he did have a first right of appeal but would have to utilize the Delayed Appeal Process. It is evident that Goins showed due diligence isnce his first appeal was filed on May 8, 2000, approximately five months after he arrived at this facility.

By Goins submitting (1) a sworn declaration, (2) a letter from counsel erroneously advising him that he could not appeal and (3) a copy of the plea hearing transcripts which are devoid of notice of appeal, should be ample evidence supporting his claim. Respondent has been unable to offer any evidence showing that Petitioner knew of his

right to appeal or that the Court or his attorney ever advised him of his right to appeal. Goins received a copy of the plea hearing transcript when the Magistrate Judge ordered the record to be expanded in his initial filing of a Petition for Habeas Corpus, but a copy of the Sentencing Hearing Transcript was not included. Goins has attempted numerous times to obtain a copy of that particular document, only to be denied; therefore he is unable to include a copy of that transcript. Most assuredly though, a right to appeal was never discussed during the sentencing hearing. This case centers on the complete failure of the court or counsel to inform Petitioner of his right to appeal. For this reason alone, as in Wolfe, this respective Court must rule that this distinction preserves Petitioner's claim in the present case.

Ohio Criminal Rule 32 states that a court must inform a defendant who pled guilty to a serious crime of his right to appeal. Furthermore, this rule was amended in 1998, and is now consistent with Fed. Rule Crim.P. 32(c)(5), which requires the court to inform a defendant who has pled guilty of his right to appeal. Petitioner has successfully shown by a preponderance of the evidence available to him, that the trial court judge and his own counsel failed to advise him of his right to appeal and that he was not otherwise aware of this right.

When evaluating a claim for habeas corpus relief, only holdings of the United States Supreme Court may be relied on with authority, Harris, 212 F.3d at 944-945. As discussed previously, the Supreme Court has specifically put in place procedural protections to protect indigent defendants, including the right to a transcript, Griffin, 351 U.S. 12, 100 L.Ed. 891, 76 S.Ct. 585; the right to appellate counsel, Douglas, 372 U.S. 353, 9 L.Ed. 2d 811, 83 S.Ct. 814; and the right to have that counsel provide effective assistance with their appeal, Evitts, 469 U.S. 387, 83 L.Ed. 2d 821, 105 S.Ct. 830. The protections set forth by the Supreme Court all assume that the defendant knows of his right to appeal. Because notice is more basic than the rights granted in Supreme Court precedent and is a foundation of Supreme Court case law, precedent mandates that due process is violated when a defendant is not informed of his right to appeal by the trial court or by his counsel. By all of the Courts, including this one, denying Petitioner's claims, was therefore an unreasonable application of clearly established Supreme Court precedent. Since the central theme of this case has never been thoroughly reviewed, this Court must allow this petition to be reopened and to go forward. Simply put, Petitioner was never advised of his right to appeal. The doctrine of laches would be inapplicable because Petitioner's delay was not unreasonable or rooted in his negligence.

Respondent's argument and the recommendation of the Magistrate Judge to deny Goins' petition is incorrect in that they claim that Petitoner's claims were barred by failure

to exercise due diligence, but that his claim based on his informed right of appeal
could not have accrued before December 20, 2000 when the Ohio Supreme Court denied his
appeal. Respondent misreads 28 U.S.C. Sec. 2244(d) to impose a requirement of due dili-
gence in this case, when the limitation period was not calculated under Sec. 2244(d)
(1)(d), but under (d)(1)(A) which provides that the limitation period shall run from
the date on which the judgment became final by the conclusion of direct review or the
expiration of the time seeking such review. Respondent claims that since Goins was
sentenced on March 29, 1999, that his thirty (30) days to seek direct review expired
April 28, 1999 and that he had until April 28, 2000 to file a post-conviction action
such as 28 U.S.C. Sec.2244(d). Respondent additionally argues that the petition of Goins
asking for habeas relief is barred from review by the one-year statute of limitations
set forth in 28 U.S.C. Sec. 2244(d), as amended by Sec. 101 of the Antiterrorism and
and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214.

   In the opinion of the Magistrate Judge in his Report and Recommendation, he states:
"Initially, petitioner argues that the limitations period is governed by Sec. 2244(d)(1)
(D) which provides the statute starts running on 'the date on which the factual predi-
cate of the claim or claims presented could have been diacovered through the exercise
of due diligence.' Petitioner argues that he relied on the advice of counsel that he
had no basis or an appeal in not appealing his conviction and sentence." "He alleges
that it was not until he was transferred to his parent institution, the Hocking Correct-
ional Facility, on January 5, 2000, where he had better access to legal materials and
advice that he realized he could file a motion for a delayed appeal. Petitioner suggests
that his untimely motions and petitions stem from the advice he received and relied
on by his trial counsel."

   The opinion goes on to erroneously claim that "petitioner was informed of his ap-
peal rights, including the requirement that he perfect an appeal whithin thirty days,
when he pled guilty and at his sentencing hearing." He also states that "Petitioner
was aware of the fact that his counsel would not be filing an appeal on his behalf
as of counsel's letter dated June 2, 1999" and that "while petitioner may not have ap-
preciated the legal significance of counsel's advice, he certainly was aware of the
facts underlying such advice."

   First of all, the opinion of the Magistrate Judge admits that Petitioner relied
on the advice of counsel in his letter dated June 2, 1999. This letter was dated exact-
ly two months after Petitioner arrived at the Prison's Reception Center when he wrote
the letter to his counsel requesting him to file an appeal on his behalf, which would
have been in plenty of time to meet the thirty days time limit, but since counsel waited
sixty days to inform Petitioner that he would not be filing an appeal, that caused the
thirty day time period to expire, which was harmful and prejudicial to Goins.

   The Magistrate Judge further claimed "In this case, because petitioner did not
file a direct appeal from the challenged judgment of conviction and sentence, his con-
viction became 'final' within the meaning of 28 U.S.C. Sec.2244(d)(1)(A) on April 28,
1999, when the thirty-day period for filing a timely appeal to the Ohio Court of Appeals
expired. Therefore, this Court concludes that the statute of limitations commenced
running an April 29, 1999, the day after the thirty (30) day period expired for filing
a timely appeal to the Ohio Court of Appeals on direct review, and expired one year

later on April 29, 2000, for filing the instant petition." The Magistrate Judge states: "The remedy for negligence by a party's lawyer is generally a legal malpractice suit or an ineffective assistance of counsel claim, not forcing the opposing party to defend against a stale claim." This is the same claim that this Court rejected in Wolfe.

Furthermore, the Magistrate Judge claims that Petitioner was advised of his right to appeal both at his plea hearing and at his sentencing hearing. He erred when he stated that as the attached transcript of the plea hearing will attest to as it is devoid of any mention of any discussion of a right to appeal and it is also erroneous when he stated that the petitioner was advised of his right to appeal at his sentencing hearing. It would be preposterous to claim that as there is no evidence to substantiate it. No transcript of the sentencing hearing has ever been produced, so there is no way he would know that. The petitioner bears the burden of showing by a preponderance of the evidence that he was not advised of his rights in appellate proceedings, Faught v Cowan, 507 F.2d 273, 275 (6th Cir. 1974). Goins offers (1) his sworn declaration that neither his counsel nor the trial court advised him of his appellate right and he did not learn that he could file a delayed appeal until informed by inmate clerks in 2000 after he arrived at Hocking Correctional Facility; (2) a letter from Counsel erroneously advising him that he could not appeal; (3) the transcript of the plea hearing which is devoid of notice of appeal. Goins is unable to submit a copy of the transcript from the sentencing hearing as the trial court refuses his efforts to obtain a copy. Now that Goins has offered ample evidence supporting his claim, now the burden of showing by a preponderance of evidence that he was advised of his appellate rights shifts to the respondent.  Goins has offered every document that is available to him for review.

The Respondent and the Magistrate erred when they stated that the time expired on April 28, 2000, for Goins to file his 28 U.S.C. Sec. 2254 (federal Habeas Corpus). This Court held in Wolfe: "The statute provides that the limitation period shall run from the latest of a number of possible dates, enumerated under (d)(1)(A) through (d)(1)(D). Even if Petitioner could have discovered the factual predicate for his claim at an earlier date, the latest date in this case was that of December 22, 1999, when his claim became final by the Ohio Supreme Court's denial of his appeal. As Wolfe's Petition for Habeas Corpus was filed well before December 22, 2000, it falls well within the one-year period of limitation of 28 U.S.C. Sec.2244(d)(1)."

In the instant case of Petitioner Goins, his appeal was denied by the Ohio Supreme Court on December 20, 2000; subsequently he filed his Petition for Habeas Corpus on March 26, 2001. As in Wolfe, it also falls well within the one-year period of limitation of 28 U.S.C. Sec.2244(d)(1). Consequently, Goins' Petition for Habeas Corpus should be allowed to go forward.

## CONCLUSION

When a defendant pleads guilty he limits his options to appeal, but certain appellate avenues remain open. The Supreme Court has previously stressed that an indigent defendant must be afforded certain procedural protections so that they may properly pursue their appellate rights such as the right for an indigent defendant a transcript for pursuing their appeal; indigent defendants have a right to counsel for their first appeal and all defendants have the right to effective assistance of appellate counsel. These rights all presuppose that the defendant is informed of the appellate rights. Due process is offended if a defendant who pleads guilty is not made aware of his right to appeal. This proposition is unaffected by the lack of explicit constitutional requirement. Ohio Revised Code Sec.2929.19 clearly prescribes what a trial judge must do and say at a felony sentencing hearing.

Proper notice was provided to the Parties under Title 28 U.S.C. Sec.636 (b)(1)(C), including notice that they would waive further appeal if they failed to file an objection to the Magistrate Judge's Report and Recommendation in a timely manner. United States v Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). Goins filed his objection in a timely manner. He also appealed the denial of his habeas corpus in a timely manner but that too, was denied on May 21, 2003. He then filed a Petition for Rehearing en banc, and that was denied also on August 26, 2003. Subsequently, Goins discovered Wolfe v Randle that was decided by this Court on March 25, 2003, thus the filing of the instant motion to have his Petition for Habeas Corpus reopened.

Pursuant to Wolfe, this Court must afford Goins the same relief that was given to Wolfe and that is Goins be released from prison unless the State of Ohio permits him to file a delayed appeal from his conviction in forma pauperis and with court-appointed counsel, within sixty days of the filing of Petitioner's filing of Petitioner's motion for a delayed appeal. The Court should further ORDER Respondent to notify the Court in writing of reinstatement of the appeal and to file a motion to dismiss their action at that time and that Petitioner Goins must notify the Court in writing upon expiration of the sixty-day period if the appeal is not reinstated. All of this must be performed in order to keep with the precedent set in Wolfe v Randle and signed by S. Arthur Spiegel, United States Senior District Judge.

## DOCUMENTS ATTACHED:

Exhibit A: Letter from Counsel to Goins giving erroneous advise that he could not appeal
Exhibit B: Transcript from Plea Hearing of Goins
Exhibit C: Sworn declaration (affidavit) from Goins claiming that neither his counsel or the trial court advised him of his appellate right and he did not learn that he could file a delayed appeal until he arrived at Hocking Correctional Facility, in January, 2000, where he was informed by inmate law clerks that he could file an appeal
Exhibit D: Respondent's Motion to Dismiss for Failure to Comply with the Habeas Statute of Limitations - 28 U.S.C. Sec.2244(d)

These documents are offered as proof to show that Goins was given erroneous ad-
vise by counsel concerning an appeal, to show that respondent in Goins made the same
arguments in Wolfe. Also, a copy of the plea hearing transcript is included so this
Court can see that the trial court did not advise Goins of his appellate rights. In-
cluded also, is a sworn declaration (as Wolfe provided) declaring that he was not
advised by the trial court nor did counsel advise him of those rights, pursuant to
Crim.R. 32 (B)(2) of the Ohio Rules of Criminal Procedure which states:

> **(B) Notification of right to appeal.**
> (2) **After** imposing sentence in a serious offense, the court, **shall** advise
> the defendant of the defendant's right to appeal....
> (3) If a right to appeal applies, the court **shall** also advise the defendant
> of **all** of the following:
> (a) That if the defendant is unable to pay the cost of an appeal, the
> defendant has the right to appeal without payment;
> (b) That if the defendant is unable to obtain counsel for an appeal,
> counsel will be appointed without cost;
> (c) That if the defendant is unable to pay the costs of documents
> necessary to an appeal, the documents will be provided without cost;
> (d) That the defendant has a right to have a notice of appeal timely
> filed on his or her behalf.

Goins respectfully argues that the District Court misconstrued this statute
when it stated in its order denying his motion to reopen his petition for Habeas
Corpus that Goins' case is distinguishable from Wolfe because unlike the petitioner in
Wolfe, petitioner here was specifically informed of his appeal rights at his plea
hearing and in writing thereto. It is true that Goins signed a form stating that he
had limited appeals but again Goins respectfully argues this is contrary to what
Crim.R. 32(B)(2) states when it mandates that the court **shall** advise the defendant
**after** imposing a sentence in a serious offense. The plea hearing always precedes the
imposition of sentencing, therefore, Goins could not have been advised of his appellate
rights after sentencing. Moreover, Goins has provided a copy of the plea hearing tran-
script and it is devoid of any mention of appellate rights.

In addition, this Court must take into consideration the procedure that takes
place in a Common Pleas Court. It is similar to a production line in the local factory
where they attempt to push through as many cases as feacably possible. The judge has
some documents in his hand that he looks over, maybe making a comment or two. He then
passes these documents to his court bailiff, who in turn gives them to defendant's
counsel for him to sign and then the defendant to sign. After, the signature is obtain-
ed, the defendant receives a copy and the remaining copies are given back to the judge.
There was no time alloted so the defendant could review the documents before signing
and asking questions. His time for review when he is returned to his jail cell where
after reading the documents, he then realizes what he signed, which was more than like-
ly, regretable. But it's too late. He then frantically attempts to get in contact with

counsel, which proves to be fruitless. Whatever he signed, is now on record. This was the case of Goins. He did sign some documents, but was not given time to review the documents either before or after signing them nor did counsel ever attempt to explain them.

Goins has attempted on numerous occasions to obtain a copy of the sentencing hearing transcript, even going as far as filing a Petition for Mandamus asking the Ohio Supreme Court to direct the Common Pleas Court of Butler County to furnish him a copy. All attempts have been denied. The Court of Appeals for the Twelfth District stated that a copy of the sentencing hearing transcript has been prepared. If that is true, why has not Goins ever received a copy to which he is entitled? These sentencing hearing transcripts would verify that Goins was never advised in court and on record, of his appellate rights pursuant to Crim.R. 32(B)(2). The respondent should be required to append a copy of the sentencing hearing transcript to their objections.

Goins respectfully argues that even if Goins was advised of his appellate rights, as claimed by the District Court, pursuant to the ruling in Wolfe, when Goins requested, by letter, that counsel file an appeal for him and counsel refused (Exhibit A), that was contrary to that ruling when the Court stated:

> "Authority to pursue appeal, even one following guilty plea, is defendant's alone, **not** determination of defendant's lawyer."

The District Court erroneously stated that Goins was informed of his appeal rights in writing and at his plea hearing further claiming that the factual predicate for his claim was known to petitioner at the time he pled guilty on January 29, 1999. This is in total contrast to what Crim.R. 32(B)(2) states when it mandates **"after"** imposing a sentence in a serious offense the Court shall advise the defendant of his appellate rights. Moreover, the District Court erred when it stated "a defendant cannot base a claim on the court's failure to inform him of his appellate rights if he has personal knowledge of these rights." The District Court further states the record plainly shows during the plea proceeding **prior** to sentencing, the trial judge advised petitioner of his right to appeal thorugh his questions about the signed plea agreement. Petitioner acknowledged he signed and understood the plea agreement and its contents, which included his appeal rights. Continuing on, the Court claims the petitioner was not prejudiced by the court's subsequent alleged failure to advise him at the sentencing hearing of his right to appeal his sentence. Thus, the court claims, the decision in Wolfe provides no basis for reopening the petition for habeas corpus.

In review of that claim in Wolfe, the Court cites Laycock v State of N.M. 880 F.2d 1184 (10thCir. 1989) in its defense of claiming that Goins had knowledge of his rights to appeal when he signed the document. Laycock cannot be used in this instance, simply because of the decision made by that respective Court when it decided:

"Laycock signed this plea agreement indicating that he understood that it **constituted a waiver of his right to appeal**."

In the present case of Goins, even though he signed a document indicating that he had signed a "Plea of Guilty and Jury Waiver," and that he understood it, it is well-settled that this procedure is a formality that transpires in Court. Moreover, the form only indicates that he was informed of his appeal rights, **not** that he was waiving his rights to an appeal, as in Laycock. In addition, the District Court Judge admits that the record plainly shows during the plea proceeding **prior** to sentencing, the trial judge advised petitioner of his right to appeal through his questions about the signed plea agreement. This statement is contrary to the mandates in Crim.R. 32(B)(2) which states the court shall advise the defendant of his right to appeal **after** sentencing is imposed. Sentencing transcripts have never been produced to show this happened. Moreover, the Court held in Laycock that if a defendant inquires about an appeal right, counsel has a duty to inform him. After Goins was sentenced, while standing before the trial judge, Goins silently asked counsel about an appeal to which he replied that he would visit him at the county jail to discuss those with him, which he did not do. Immediately upon arrival at the prison's reception center, Goins sent counsel a letter asking him to file an appeal for him. Counsel replied with the letter included as Exhibit A.

The Court in Wolfe cited Cf. Peguero v U.S., 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18, which is a Federal case. That court stated:

Current Rule 32(c)(5) imposes on the district court the duty to advise the defendant **at sentencing** of any right to appeal. It went on to claim "The requirement that the district court inform a defendant of his right to appeal serves important funsctions. It will offer be the case that, as soon as sentence is imposed, the defendant will be taken into custody and transported elsewhere, maiking it difficult for the defendant to maintain contact with his attorney. The relationship between the defendant and the attorney may also be strained after sentencing, in any event, because of the defendant's disappointment over the outcome of the case or the terms of the sentence. If the defendant is advised of the right by the judge who imposes sentence, the defendant will realize that the appeal may be taken as of right and without affront to the trial judge, who may later rule upon a motion to modify or reduce the sentence. Advising the defendant of his right **at sentencing** also gives him a clear opportunity to announce his intention to appeal and request the court clerk to file notice of appeal, before the time period runs out. These considerations underscore the importance of the advice which comes from the court itself. Trial judges must be meticulous and precise in following each of the requirements of Rule 32 in every case. The Court subsequently ruled that the court's failure to give the required advice was error.

The controlling case of Wolfe, also cites White v Johnson, 180 F.3d 648, 652 (5th Cir.1999) in making its decision. That court held that defendant did not waive his state right to appeal, where trial court's remarks concerning availability of appeal, pursuant to guilty plea agreement, did not provide defendant with knowledge of his appellate rights, for purposes of determining whether he waived those rights by failing to file timely appeal, where judge did not

inform defendant that he had only 30 days to file appeal or that he was enti-
tled to appointed counsel on appeal.

    The Court in White also stated:
Where counsel's failure to advise a criminal defendant of his appellate rights
causes the defendant to lose the right to appeal his conviction or sentence,
prejudice is presumed and habeas relief does not depend upon whether the defend-
and would have been able to raise meritorious issues on appeal. U.S.C.A. Const.
Amend. 6.

    White also decided counsel is constitiuonally required to fully inform
the defendant as to his appellate rights and that **the decision whether to appeal
is made by the defendant.** Moreover, the court held that even if defendant had
some generalized knowledge that he had limited right to appeal, counsel who
failed to inform defendant that he had only 30 days to appeal and that he had
right to appointed counsel for purposes of preparing appeal provided consti-
tutionally deficient performance for purposes of defendant's ineffective
assistance of counsel claim. In addition, the court stated that trial counsel's
failure to inform defendant that he had to file state court appeal within 30
days of judgment and that he was entitled to appointed counsel on appeal con-
stituted ineffective assistance of counsel; neither counsel nor court **fully**
informed defendant about his appellate rights and defendant attempted to exer-
cise his right to appeal after time had expired, subsequently appeal was dis-
missed as untimely and fact that defendant lost his right to appeal due to
counsel's deficient performance constituted prejudice.

    In White, the Director argues that White was apprised of his right to
appeal relying upon statements made by the trial court to White during the 1990
hearing in which the trial court placed White on deferred adjudication.  During
that hearing, the trial court explained to White the consequences of his guilty
plea and the trial court's decision to approve the plea bargain. One of those
consequences was that White would have only a limited right to appeal. The trial
court then made certain remarks concerning the availability of an appeal. The
trial court did not, however, at that or any other time apprise White that he
would have only thirty days to file an appeal or that he was entitled to appoint-
ed counsel on appeal. Even assuming the trial court's 1990 advice concerning
White's ability to appeal from the trial court's decision to  place him on
deferred adjudication probation would be sufficient to provide notice to White
concerning his separate and differing right to appeal from the revocation pro-
ceedings, the trial court did not inform White that he had only thirty days to
perfect an appeal.

Another interesting and relevant case is Roe v Flores-Ortega, 120 S.Ct. 1029

(2000) that was decided February 23, 2000 in the United States Court of Appeals for

the Ninth Circuit. That Court held that the best practice is for counsel to routine-

ly consult with defendant regarding possibility of appeal and counsel has consti-

tutionally-imposed duty to consult about appeal when there is reason to think either

(1) that rational defendant would want to appeal, or (2) that this particular de-

fendant reasonably demonstrated to counsel that he was interested in appealing. The

Court must consider certain factors such as whether plea expressly reserved or waived

some or all appeal rights. The Flores-Ortega Court held that counsel's alleged fail-

ure to file notice of appeal, depriving defendant of appellate proceeding altogether,

was prejudicial. Moreover, the court decided when counsel's constitutionally defi-

cient performance deprives defendant of appeal that he otherwise would have taken,

defendant has made out successful ineffective assistance of counsel claim entitling him to an appeal. Furthermore, the Court held that a lawyer who disregards a defendant's specific insturctions to file a notice of appeal acts in a professionally unreasonable manner. (see Rodriguez v United States, 395 U.S. 327, 89 S,Ct. 1715, 23 L.Ed.2d 340. Moreover, the court ruled the complete denial of counsel during a critical stage of a judicial proceeding, however, mandates a presumption of prejudice because "the adversary process itself" has been rendered "presumptively unreliable." United States v Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657.

Whether to appeal is equivalent to the decision to plead guilty by a defendant. It rests completely with the defendant, not the lawyer. Those whose right to appeal has been frustrated should be treated exactly like any other appellant. It is unreasonable for a lawyer to walk away from his client without representation after trial or after sentencing without at the very least acting affirmatively to ensure that the client understands the right to appeal. Moreover, where appeal is available as a matter of right, a decision to seek or forgo review is for the convict himself, not his lawyer. Jones v Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987, who owes a duty of effective assistance at the appellate stage. In the case of Goins, since he requested that counsel file a timely notice of appeal on his behalf, the derelict character of his counsel's performance is clearer than most would realize. The Strcikland court explicitly noted that a lawyer has a duty "to consult with the defendant on important decisions ... in the course of prosecution." The decision whether to appeal is one such decision and a lay defendant needs help before deciding. If the crime is minor, the issues simple, and the defendant sophisticated, a 5-minute conversation with his lawyer mat well suffice; but if the charge is serious, the potential claims subtle and a defendant is uneducated in law, hours of counseling may be in order. But only in the extraordinary case will a defendant need no advice or counsel whatsoever. Thus, ABA Standards for Criminal Justice 21-2.2(b) (2d ed.1980):

"Defense counsel should advise a defendant on the meaning of the courts judgment, of defendant's right to appeal, on the possible grounds for appeal, and of the probable outcome of appealing. Counsel should also advise of any post-trial proceedings that might be pursued before or concurrent with an appeal. While counsel should do what is needed to inform and advise defendant, the decision whether to appeal, like the decision whether to plead guilty, must be the defendant's own choice."

The case of Goins is the same as Flores-Ortega where the question was presented to the court whether, after a defendant pleads guilty or is convicted, the Sixth Amendment permits defense counsel to simply walk away, leaving the defendant uncounseled about his appeal rights. Courts should not be divided on this question with the response being: **hardly ever**. It is plain that the duty of counsel to consult was not satisfied in Goins.

17

Another case that is relevant to Goins', is <u>Granger v Hurt</u>, 84 Fed.Appx 500 (6thCir. 2003). This is a case that was decided in this respective Court. Goins filed a motion for a delayed direct appeal pursuant to Ohio Appellate Rule 26(B) on May 8, 2000. That motion was denied by the Ohio Court of Appeals on June 20, 2000. Goins then filed a motion for leave to appeal to the Supreme Court of Ohio, which was denied on December 12, 2000. On March 26, 2001, Goins filed a petition for Habeas Corpus, claiming that he had been denied both his right to appeal and to the effective assistance of counsel because of his attorney's failure to file a timely notice of appeal after being requested to do so. The district court dismissed Goins' Habeas petition on the ground that he had failed to file the petition within the one-year statute of limitations. Goins filed a timely appeal into The United States Court of Appeals, Sixth Circuit, but that Court refused to grant a certificate of appealability (COA). Since that time, Goins has discovered that the Courts have made rulings that are contrary to the decisions of the Sixth District Court and the United States Court of Appeals, Sixth Circuit. Those decisions have had adverse effects in the case of Goins, but now that the various Courts have made their rulings, they would be beneficial to the instant case of Goins, therefore, now that these Honorable Courts (mainly this one) have made those decisions, it has set a legal precedent and Goins respectfully argues that those decisions must be applied to his case also, which would permit his habeas petition to go forward.

According to the recently decided case of <u>Granger v Hurt</u>, where the court held that he filed his habeas petition within the one-year statute of limitations, the same ruling must be held in the case of Goins. The District Court claims that <u>Granger</u> provides no support for Goins' petition to reopen in this matter. The Court claims that the one-year limitation period of the AEDPA did not begin to run until the petitioner discovered that his counsel had not filed an expected appeal. The District Court continues stating "while Granger's petition claimed ineffective-assistance of counsel was based upon his counsel's failure to file a timely appeal, petitioner here (Goins) claims he was never informed on his right to appeal, a claim that is clearly disputed by the record." In <u>Granger</u>, the Court cites <u>White v Schotten</u>, 201 F.3d 743 (6thCir. 2000) in helping them to decide the case, but the White Court held:

> "Attorney's failure or refusal to abide by established time deadlines in
> handling a client's appeal is conduct falling below the minimal standards of
> competency that federal case law has imposed upon counsel to satisfy consti-
> tutional safeguards." U.S.C.A. Const.Amend. 6. Moreover, the court decided:
> "Defendant is entitled to effective assistance of counsel on direct appeal."
> In addition, the <u>White Court</u> referred to <u>Rodriguez v United</u> States, 395
> U.S. 327, 330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969) which stated: "Those whose
> right to appeal has been frustrated should be treated exactly like any other
> appellent; they should not be given an additional hurdle to clear just because
> their rights were violated at some earlier stage of the proceedings."

As in White, Goins has shown cause for his default and he has shown that he was actually prejudiced by counsel's refusal to file a timely appeal on his behalf, therefore, he is entitled to federal review of the merits of his claims. The heart-of-the-matter is that even if Goins was advised of his appellate rights and if the Court abided by Crim.R. 32(B)(2), it was still in violation of the decision that the United States District Court for the Southern District of Ohio, Western Division, made when it stated that the decision to appeal is the defendant's, **not** the law-yer's. When Goins asked counsel to file a timely appeal on his behalf and he refused to do so, this violated Goins' right to due process and equal protection of the law.

Moreover, as Wolfe, Goins attempted to file motions through delayed appeals, both to the Court of Appeals and the Supreme Court, which were denied. The Ohio Supreme Court made their decision on December 12, 2000 which meant that that decision concluded the direct review of his case. Goins thus had until December 12, 2001, to file his habeas petition. He filed on March 26, 200, which would make Goins' petition timely, according to Granger.

To require a prisoner to know the requirements of filing an appeal, including time limits, ignores the reality of the prison system and imposes an unreasonable burden on prisoners seeking to appeal. Counsel's errors depriving Goins of his appeal rights are difficult to distinguish from that of some who had no counsel at all. The Stearns rule (see United States v Stearns, 68 F.3d 328 (9th Cir.1995) mandates:

"Such a rule effectively imposes an obligation on counsel in all cases either (1) to file a notice of appeal, or (2) to discuss the possibility of an appeal with the defendant, ascertain his wishes and act accordingly."

Goins respectively argues none of this took place.

In U.S. v Edwards, 297 F.Supp.2d 813 (E.D.Pa. 2003), the Court held:

"If petitioner asked his attorney to file an appeal and his attorney failed to do so, counsel's performance is ineffective under Strickland. With regard to objective reasonable representation, 'a lawyer who disregards specific instruct-ions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." (citing Roe v Flores-Ortega. Moreover, the Edwards Court held "With respect to the second element of the Strickland standard, [p]rejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client." (citing Solis v United States, 252 F.3d 289, 293-294 3d Cir.2000).

The court in Valletto v United States, 195 F.Supp.2d 643 (D.N.J.2002), held that "defense counsel has an obligation to determine his client's intentions regarding an appeal even if the client never explicity directs his counsel to file an appeal. As in Valletto, who directed counsel to "put in an appeal for me,' Goins did exactly the same thing when he sent counsel a letter asking him to "put in an appeal for me." Instead, counsel sent Goins a letter stating that he had no basis for an appeal which, in essence, left Goins stranded.

The Valletto Court stated that a petitioner is not required to establish that his "appeal would have succeeded or even would have had merit."

## SUMMARY AND ARGUMENT

Petitioner has for the past 4½ years unsuccessfully pursued every avenue
open to him in an effore to obtain a decision on the merits of his appeal and to
prove that his conviction was unlawful. The Ohio appellate courts' refusal to hear
him on the merits of his claim does not stem from any view of those merits and
the Petitioner does not argue that those courts were constitutionally required to
render judgment on the appeals in his favor. Rather, the issue this court must de-
cide is whether the state court's dismissal of the appeals and the District Court's
refusal to reopen his petition for Habeas Corpus, despite the ineffective assistance
of petitioner's counsel for refusing to file a timely notice of appeal when requested
to do so,violates Due Process Clause of the Fourteenth Amendment.

Goins has provided ample and sufficient evidence through documents and the citing
of cases of law and statutes to support his claim and to show that the Fourteenth
Amendment guarantees a criminal appellant pursuing a first appeal as of right certain
minimum safeguards necessary to make that appeal adequate and effective. Among those
safeguards is the right to counsel, created by the Sixth Amendment and applied to
the States through the Fourteenth Amendment.

Almost a century ago, the Courts held the Constitution does not require States
to grant appeals as of right to criminal defendants seeking to review alleged trial
court errors. McKane v Durston, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894).
Nonetheless, if a State has created appellate courts as "an integral part of the
system for finally adjudicating the guilt or innocence of a defendant," Griffin
v Illinois, 351 U.S. at 18, 76 S.Ct., at 590, the procedures used in deciding appeals
must comport with the demands of the Due Process and Equal Protection Clauses of the
Constitution.

The services of a lawyer for virtually every layman be necessary to present an
appeal in a form suitable for appellate consideration on the merits. Douglas v Cal-
ifornia recognized that the principles of Griffin required a state that afforded a
right of appeal to make that appeal more than a "meaningless ritual" by supplying
an indigent appellant in a criminal case with an attorney. The right to counsel is
limited to the first appeal as of right. (see Ross v Moffitt, 417 U.S. 600, 94 S.Ct.
2437, 41 L.Ed.2d 341 (1974). The attorney must be available to assist in preparing
and submitting a brief to the appellate court, Swenson v Bosler, 386 U.S. 258, 87
S.Ct. 996, 18 L.Ed.2d 33 (1967) (per curiam), and must play the role of an active
advocate, rather than a mere friend of the court assisting in a detached evaluation
of the appellant's claim.

Gideon v Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, held that the
Sixth Amendment right to counsel was "'so fundamental and essential to a fair trial,
and so, to due process of law, that is is made obligatory upon the States by the
Fourteenth Amendment.'"

Gideon rested on the "obvious truth" that lawyers are "necessities, not luxuries" in our adversarial system of criminal justice. The defendant's liberty depends on his ability to present his case in the face of "the intricacies of the law and the advocacy of the public prosecutor." The criminal proceedings are thus not conducted in accord with due process of law unless the defendant has counsel to represent him where he has the right to legal representation, such as appeals; hterefore, a first appeal as of right is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney. The result would hardly be novel. It would be a futile gesture for a defendant to have a right to counsel unless it comprehended the right to the effective assistance of counsel and no counsel, at all, is worse than counsel who performs in name only.

In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that – like a trial – is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant - like an unrepresented defendant at trial – is unable to protect the vital interests at stake. A party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all.

Goins maintains that the decision by the District Court was in error and an abuse of discretion, hterefore, he requests this Court review his claim of ineffective assistance of counsel for not filing a timely notice of appeal on his behalf, when he was requested to do so, violated his right to due process and equal protection of the law. Goins asks this court to review his petition for reopening his habeas corpus de novo, which would most certainly allow it to go forward.


Respectfully submitted,


Dana Goins, pro se
373-041
Hocking Correctional facility
Box 59
Nelsonville, Ohio  45764

## SUPPLEMENT

Petitioner Goins ("Goins") has discovered another case of law that is relevant to his Motion for Reopening of Petition for Habeas Corpus. This case would be extremely helpful to this Honorable Court if there are any doubts whether to allow Goins' Motion to Reopen his Petition for Habeas Corpus that has previously been denied on October 25, 2002. **Pursuant** to this newly discovered case, it should leave no doubts in the minds of the jurists of this Court as to what decision to make.

This newly discovered case, <u>Duncan v U.S</u>., 842 F.Supp. 1016 (M.D.Tenn, 1993), was decided on November 24, 1993, in the U.S. District Court, M.D. Tennessee, Nashville Division by J. Higgins, District Judge. Judge Higgins held that attorney's failure to appeal client's sentence despite client's instruction to do so is breach of basic duty of loyalty and deviates from objective standard of reasonableness. Judge Higgins also held that failure to perfect requested appeal apparently warrants legal presumption of prejudice thus satisfying second prong of claim for ineffective assistance of counsel. When the Judge made that decision, it also implies when counsel does not file a requested appeal on behalf of the client, it constitutes a violation of the right to due process and equal protection of the law which is guaranteed by the United States Constitution.

As noted by the United States Court of Appeals for the Sixth Circuit, an individual's "right to appeal and to counsel at appeal are personal rights of Constitutional dimension." <u>Boyd v Coawn</u>, 519 F.2d 182, 184 (6th Cir. 1975). "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume asquiescence in the loss of fundamental rights.'" <u>Carnley v Cochran</u>, 369 U.S. 514, 82 S.Ct. 889, 8 L.Ed.2d.

In this instance, the attorney error alleged is the failure of Goins' attorney to file an appeal, despite his instructions to do so. If proven such inaction comprises a breach of an attorney's basic duty of loyalty, which certainly deviates from the "Objective standard of reasonableness" required in <u>Strickland v Washington</u>, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed. at 693. As noted by the Supreme Court, the fair process constitutionally guaranteed each individual "can only be attained where counsel acts in the role of an active advocate in behalf of his client." <u>Anders v California</u>, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498 (1967). This role of advocate requires that the attorney "support his client's appeal to the best of his ability." Id. Blatantly ignoring a client's directive to file an appeal when instructed to do so by a defendant obviously contradicts this mandate. Even if examination of the case reveals that an appeal would be frivolous, such inaction violates the advocacy required of counsel. In such cases, the Supreme Court specifically requires that counsel so advise the court and request permission to withdraw. <u>Anders</u>, 386 U.S. at 744, 87

S.Ct. at 1400, 18 L.Ed.2d at 498. This request must "be accompanied by a brief refer-
ring to anything in the record that might arguably support the appeal." Id.

In addition, one could hardly argue that failing to perfect an appeal, despite a
client's express directive to the contrary, could be the result of an attorney's reason-
able judgment under the circumstances. Therefore, an attorney's failure to comply with
a client's directive to appeal, **if proven**, would fulfill the performance prong of the
the Strickland test:[1] Accordingly, determination of the attorney incompetence prong
of the Strickland test in this action requires resolution of whether Goins requested
counsel to file an appeal, or not, and if counsel ignored this request.

With the submission of the letter from counsel (Exhibit A), this is a strong indic-
ation that Goins did, in fact, request an appeal to be filed in his behalf, only to have
counsel refuse to do it. This letter is invaluable to the Court in its evaluation of
the merits and facts of the instant case.

In addition, it cannot be disputed that an attorney's failure to perfect an appeal,
despite his client's direction to do so, has serious ramifications which negatively im-
pact the fundamental fairness of the overall proceedings. A claim based on the failure
to perfect a requested appeal, if proven, warrants a legal presumption of prejudice,
similar to that found in other Sixth Amendment contexts, namely, cases involving actual
or constructive denial of counsel or conflict of interest. Strickland at 691, 104 S.Ct.
at 2067, 80 L.Ed.2d at 696.

This interpretation corresponds with the Supreme Court's assertion that "those
whose right to appeal has been frustrated should be treated exactly like any other ap-
pellant; he should not be given an additional hurdle to clear just because the rights
were violated at some earlier stage in the proceedings." Rodriguez v United States, 395
U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340, 344 (1969). Defendant is not re-
quired to show meritorious issues to be appealed when denied right to appeal due to
counsel failing to file an appeal, Bonneau v United States, 961 F.2d 17, 23 (1st. Cir.
1992).

Counsel is required to advise the court that an appeal would be frivolous and re-
quest permission to withdraw. A brief which makes reference to all potential arguments
in support of an appeal must accompany the request to withdraw. An attorney's failure

---

[1] Such an interpretation corresponds with the observation of the United States Court
of Appeals for the Sixth Circuit that "courts have found that a defendant has been de-
nied effective assistance of counsel when the malfeasance or nonfeasance of his or her
counsel effectively deprived the defendant of the right to appeal." Riley, 712 F.2d at
386. In Riley, the Sixth Circuit specifically noted that, as in cases where counsel fail-
ed to file or perfect an appeal, the attorney's misguided trial strategy effectively
deprived the client of the right to appeal, a result which the Court found strengthened
its finding of prejudice. Id.

to perfect a requested appeal, without seeking to withdraw from the case and filing the required documents, would obviously comprise non-compliance with the mandate of Anders.

In Freels v Hills, 843 F.2d 958, 964 (6th Cir.), the Court held the defendant was entitled to have appellate counsel perfect an appeal and advocate his position or follow the mandated Anders procedures. In its decision, the Freels Court noted that "if we were to allow the adsence of viable issues on appeal to serve as an excuse for counsel's failure to follow the mandates of Anders, we would be effectively erasing Anders from the books altogether." Id at 964. The Court reiterated this principle in a later case by stating that "appellate counsel's failure to meet the requirements of Anders v California, is presumptively prejudicial and, therefore, need not be measured by the standards in Strickland v Washington." Allen v United States, 938 F.2d 664, 666 (6th Cir. 1991).

After reviewing all of the available evidence, this Court must find that Goins, because of his counsel refusing to perfect a timely appeal after being requested to do so, was denied right to due process and equal protection of the law. Therefore, pursuant to the newly submitted case, Duncan v U.S., this Court should allow his Petition for Habeas Corpus to be reopened and to go forward. There can be no question as to whether or not Goins requested counsel to file an appeal on his behalf. Exhibit A settles that point, thus the denial of his right to due process and equal protection of the law.

Respectfully submitted,

Dana Goins, pro se
373-041
Box 59
Nelsonville, Ohio  45764

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| DANA GOINS, pro se | : | Case No. C-01-185 |
| Petitioner | : | Judge Weber |
| -vs- | : | Magistrate Judge Sherman |
| SAMUEL TAMBI, Warden | : | **ADDENDUM TO MOTION FOR REOPENING** |
| | | **OF PETITION FOR HABEAS CORPUS** |
| Respondent | : | |

NOW COMES Dana Goins, Petitioner, pro se, who respectfully asks this Court
to accept his Addendum (Supplement) to a previous filed Motion to Reopen his
Petition for Habeas Corpus that was filed by this Court on January 16, 2004.
No decision has been rendered as of yet, therefore, Petitioner prays that the
Court will take a newly discovered case of law for consideration in reopening
his petition.  This case, UNITED STATES OF AMERICA ex rel. Elliot THURMOND, Peti-
tioner, v. Vincent R. MANCUSI, Warden, Respondent, No. 67 C 526, 275 F.Supp 508;
1967 U.S. Dist. LEXIS 8626, was decided by the UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK, and will offer further proof that Petitioner
Goins was denied the right to due process and equal protection of the law when his
Petition for Habeas Corpus was denied. The THURMOND case along with WOLFE, should
set aside any doubts that Petitioner Goins' Habeas Corpus petition must be allowed
to go forward.

Respectfully submitted,

Dana Goins, pro se
373-041
Hocking Correctional Facility
Box 59
Nelsonville, Ohio  45764

## ADDENDUM

In THURMOND, the United States District Court for the Eastern District of New York decided that the only way to adequately protect petitioner's rights is to vacate the judgment of conviction and allow him time to appeal which would be measured from the rendition of a new judgment.

In Thurmond, he had written the sentencing judge informing him that his lawyer had promised him that he would receive probation if he would plead guilty to the sale of marijuana. Instead, he received a term of two and one-half to five years imprisonment. In response to the letter, the Chief Law Assistant of the Nassau County Court informing him that nothing could be done and that there were no provisions in the law permitting a judge of the Court to commute or otherwise suspend a properly imposed sentence during its term once the prisoner has commenced actual service of the sentence.

The District Court ruled, "...the statement of the Chief Law Assistant that 'we can do nothing further in this matter,' might well have been understood by a layman to mean that no avenue of attacking the sentence was then open."

When Petitioner Goins received the letter from his attorney (see Exhibit A in previously filed motion), stating that he did not have any basis for an appeal and that his only remedy available from the Court is the filing of a motion for judicial release, that letter was equivalent to the letter that THURMOND received from the Chief Law Assistant and led Goins to believe that he had "no avenue of attacking the sentence." Counsel's letter to Petitioner Goins was somewhat misleading as Ohio has construed Rule 32.1 of its Code of Criminal Procedure which permits a defendant to withdraw a plea of guilty to correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

The Court must examine the data available to the defendant's mind and take into account the natural strains and anxieties of a person in the defendant's position. While a defendant's surprise at the "severity of the sentence" will not itself invalidate a plea (United States v Shneer, 194 F.2d 598, 600 (3d Cir. 1952), it may be evidence of defendant's belief as to what he was promised in return for his plea.

Although not, perhaps, of constitutional significance, the Court should not ignore the fact that it is as embottering to a defendant – and as destructive of possible rehabilitation – for him to falsely conclude that he was misled as it is for him to reach that conclusion correctly. Certainly, no procedure can prevent many defendants from believing that they were unfairly treated. Whatever the circumstances, many of them, brooding in their cells, will ultimately be convinced of their own purity and the impropriety of society in dealing with them. But it is not too much to expect that society will so design its criminal procedures to be fair to the defendant.

The heart of the matter was whether petitioner was denied effective assistance of counsel at or immediately following sentence. Cf. United States ex rel. Maselli v. Reincke, 261 F.Supp. 457 (D.Conn.1966, aff'd, 383 F.2d 129 (2d Cir. 1967) (failure of counsel to advise defendant of right to appeal.) This question is particularly serious in view of the questionable legal advice purportedly given by a County Court official immediately following sentencing.

The THURMOND court found that he was denied his right to appeal from the judgment of conviction because 1) Counsel stated that he did not advise petitioner with respect to the right of appeal, and 2) the letter received from the Chief Law Assistant was reasonable interpreted by him as foreclosing further procedures attacking the sentence. In the instant case of Petitioner Goins, there can be no question as to the fact that counsel did not advise him of his right to appeal; the letter offers proof of that and could also be interpreted as foreclosing further procedures for attacking the sentence that was imposed.

There must be a growing awareness of the need for adequate representation for criminal defendants immediately after trial. This problem was posed by experienced appellate counsel for New York City's Legal Aid Society:

"I think we all recognize that men have trial counsel, men have appellate counsel. But what happens in between? A man is convicted * * * he has ten days within which to file a notice of appeal and if he doesn't do it, he never will be in a position where he can get appellate counsel. The present practice * * * in most districts is that when a trial counsel, if he is retained, loses his case and there is no fee to be had for an appeal, he leaves his client. * * * during this * * * critical period many defendants are unrepresented, receive no advice about how to proceed further, or how to protect their rights. This, I think, is one of the more serious and glaring omissions in the present practice and present law on the question of representation of defendants, and this applies equally to indigent or non-indigent defendants." 36 F.R.D. 116, 153-154 (1965) (statement of Leon Polsky in a panel discussion held at the 1964 Judicial Conference of the Second Circuit).

The sensitivity to the problem has been reflected in three decided cases, which, when read together, lead to the conclusion that the failure on the part of trial counsel in the present case to inform his client of his right to appeal violates the 6th and 14th Amendments. See United States ex rel. Maselli v Reincke, 261 F. Supp. 457, 460 (D.Conn.1966), aff'd, 383 F.2d 129 (2d Cir.1967) (defendnat informed counsel he wanted to appeal, but counsel failed to do so and neglected to inform defendant that the state would appoint counsel to assist him; "loss of defendant's right of appeal caused by conduct of his counsel may constitute a deprivation of constitutional due process."); Wynn v Page, 369 F.2d 930 (10th Cir.1966); Fox v State of North Carolina, 266 F.Supp. 19 (E.D.N.Car.1967) (counsel discussed possible appeal with defendant but failed to inform him of statutory time limit for filing notice of appeal); Amer-

ican Bar Assiciation Project on Minimum Standards of Criminal Justice, Appellate Review of Sentences, Standard 2.2(b)(i)(1967)(advice on right to appeal); Note, 78 Harv.L.Rev. 1434, 1447 (1965); cf., Court Rules, New York Supreme Court Appellate Division, Second Judicial Department, Rule III(a)(1967) ("upon conviction in the trial court ... written notice to his client advising him of right to appeal and requesting his written instructions as to whether he desires to take an appeal").

On Wynn v Page, a case much like petitioner's, the court described the facts as follows:

> "With the help of a friend, appellant retained his own counsel for trial. Appellant did not see his counsel after the verdict was returned and judgment and sentence imposed ... No one, not even his attorney advised appellant of his right to appeal the conviction and sentence ... and of proper appellate procedure. It appears that appellant's attorney was of the opinion that no reversible error occurred during the trial and there was no discussion after the trial between counsel and appellant concerning appeal." 369 F.2d at 932.

Under such circumstances, the court held that appellant's fundamental right to assistance of counsel concerning his right to appeal was not adequate,y safeguarded." 369 F.2d at 932-933. In the present case of Petitioner Goins, a similar conclusion is warranted.

That Goins was unaware of his right to appeal is highly probable. First, it is not likely that a layman would know that, after pleading guilty, an appeal would lie on the ground that the sentence imposed was excessive. Second, the trial court never informed petitioner of his right to appeal. Third, even if the court had advised petitioner of a right to appeal, from the letter that counsel sent to petitioner, he made the decision for him not to appeal. This is contrary to the ruling in Wolfe v Randle, "The authority to pursue an appeal, even one following a guolty plea, is the defendnat's alone. The decision to appeal is not the determination of a defendant's lawyer."  Fourth, petitioner never saw counsel after sentence was imposed. Fifth, Goins was affirmatively misled by the letter of his attorney to conclude that no means of attacking the sentence were available in the state courts.

Were a court to speculate concerning the possibilities of a successful motion or appeal as being poor would be in error as the chances of success are not relevant in the proceeding unless the questions before the state courts would hae been frivolous. On the record, no Court could say that the state courts would have considered them frivolous in the present case of Goins. Accordingly, this Court must find that Goins was denied his constitutional rights to representation and to appeal.

The Court in <u>State v Sims</u>, 272 NE2d 87 held that:

> In absence of evidence in record upon which it could be determined that defendant, knowlingly and intelligently waived his right of direct appeal from conviction and his right to court-appointed counsel for appeal prior to expiration of time in which appeal could be taken, Court of Appeals was required to make such factual determination before it dismissed motion for leave to appeal. Moreover, counsel must be provided for an indigent convicted defendant for an appeal as of right. This right exists even in tha absence of a request as articulated in <u>Swenson v Bosler</u>, (1967), 386 U.S. 258, at 260, 87 S.Ct. 996, at 997, 18 L.Ed. 2d 33 where it states "...It is now settled 'that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.'" <u>Carnley v Cochran</u>, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed. 2d 70.

> "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." <u>Johnson v Zerbst</u> (1938), 304 U.S. 458, at 465, 58 S.Ct. 1019, at 1023, 82 L.Ed. 1461.

Goins maintains had he not been denied this right to counsel, he would have had a reasonable opportunity to file his notice of appeal within the time limited by statute.

Senior Circuit Judge Medina stated, in <u>United States, ex rel. Smith v McMann</u> (1969), 417 F.2d 648, 654:

> "We think the only practical, logical and fair interpretation to be given to Douglas v California is that it imposes upon the state a duty to warn every person convicted of a crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent. The right to appeal at state expense is mere illusion if the convicted indigent defendant does not know such a right exists. And the one way to make sure that he does know is to **tell him so.** Such a simple and comprehensive construction avoids the complication of a variety of miscellaneous fact patterns thathave no relevance whatever to the underlying principle of Douglas v California, but which may frustrate and render ineffective its beneficent purpose."

Essentially, the consensus of the courts is that no conceivable benefit can be derived from the rights of which one is unaware. If one's right to direct appeal and his right to court-appointed counsel for such an appeal are to be viable, it is imperative that there be such a determination of such rights, by the appellate court. To consider otherwise, would be to make the appellant's right to direct appeal and his right to counsel for such a direct appeal merely "sound and fury signifying nothing."

**Remedy:**

The time to appeal has long since expired. Since petitioner took no steps to perfect an appeal, Ohio Courts have held that they lack power to permit an appeal. The only way to now adequately protect petitioner's rights would be to vacate the judgment of conviction. A new sentence can be imposed and time to appeal measured from the rendition of a new judgment.

Respectfully submitted,

Dana Goins, pro se
373-041

## SUPPLEMENTAL ARGUMENT

Goins has previously discussed the procedure that takes place in the court-room during a hearing of a defendant (pgs. 13, 14). He has discovered on page 6 of the plea hearing transcript thathas been included with his NOTICE OF APPEAL, TO FURTHER HIS CLAIM THAT THE HEARINGS AMOUNT TO NO MORE THAN A ROUTINE, a "beaten path" sort-of-type-of-thing that takes place in each and every hearing. The plea hearing transcript goes as follows:

**BY THE BENCH:** All right. May I have the form back please? We're gonna spend some time going over this Mr. Goins. I do this in **every** guilty plea because even though **you've heard me do it in other cases today....**"

The day of the plea hearing, approximately 20 other inmates were "herded" from the County Jail to the Court of Common Pleas, also for their hearings, Goins had to wait until approximately ten inmates had their hearing before having his. During this time, the same words were uttered with the same ritual taking place, as discussed on pages 13 and 14. Not one inmates had their rights to an appeal explained to them nor did they have the forms that they signed explained to them, by the judge and in court. As Goins stated, it was more like a production line at the local factory. The plea hearing transcript is proof that Goins did not have his appellate rights explained to him as mandated by Crim.R. 32(B). And repeating what has previously been claimed, there have been no sentencing hearing transcript pro-duced to contradict his claim.

A last argument is that on page 4 of the denial of the District Court's order of Goins' motion to reopen his Petition for Habeas Corpus, the Honorable Senior Judge, Herman J. Weber states "if petitioner wishes to obtain review of the Court's decision, he must pursue an appeal to the United States Court of Appeals for the Sixth Circuit." This must be construed that he has given Goins permission to file an appeal into this Court as there must be    some doubt concerning the decision that he made.

Respectfully submitted,

Dana Goins, pro se
373-041
Hocking Correctional Facility
Box 59
Nelsonville, Ohio  45764

**SUPPLEMENT (2)**

Using <u>Granger v Hurt</u>, 84 Fed.Appx. 500 (6th Cir. 2003) to calculate the one-year statute of limitations for filing habeas corpus petitions which was established by the Antiterrorism and Effective Death Penalty Act (AEDPDA), providing in pertinent part as follows:

(d)(1)  A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

Goins has previously argued pursuant to <u>Granger</u> that when the Ohio Supreme Court denied his motion on December 12, 2000, that decision concluded the direct review of Goins' case. (<u>White v Schotten</u>, 201 F.3d at 752-53, 6th Cir.2000). As excerpted above, the one-year period of limitation for an application for a writ of habeas corpus "run[s] from the latest of the date on which the judgment became final by the conclusion of direct review...." 28 U.S.C. §2244(d)(1)(A). Goins thus had until December 12, 2001 to file his habeas petition. He filed on March 26, 2001. Goins' application was therefore timely, which means that the district court's judgment must be reversed and Goins' motion to reopen his habeas petition must be allowed to go forward.

On the other hand, the court recognizes that the Ohio courts have been "unanimously hostile" to this court's holding in <u>White</u>. <u>Lambert v Warden</u>, No. 01-3422, 2003 WL 22071466, at*4, 81 Fed.Appx. 1 (6th Cir. Sept. 2, 2003) (noting that Ohio courts have refused to follow <u>White</u> in every single instance). Ultimately, the <u>Lambert</u> court ruled that the <u>White</u> precedent cannot be ignored and this court agreed. Therefore, Goins' petition is timely pursuant to §2244(d)(1)(A). But in light of the apparent discontent with <u>White</u>, Goins will discuss an alternative ground for why his petition would still be considered timely filed.

Goins ineffective-assistance claim is based upon counsel's failure and refusal to file a timely appeal, therefore, he could not have been aware of this failure at the close of his court hearings.

The district court, on the other hand, held that Goins could have discovered the factual predicate of his claim on April 29, 1999, the date when the time for filing his notice of appeal expired. Although it can be agreed that Goins <u>could</u> have discovered his counsel's failure on that date, to require that he do so ignores the reality of the prison system and imposes an unreasonable burden on prisoners seeking to appeal. See <u>Wims v United States</u>, 225 F.3d 186, 190 n. 4 (2d Cir.2000) stating that "[t]he statute does not require the maximum feasible diligence, only 'due,' or reasonable, diligence.")

In the present case, Goins sent his attorney a letter, upon arriving at the Prison's Reception Center April 2, 1999, asking him to file an appeal on his behalf. Goins received the letter (Exhibit A)(dated June 2, 1999), informing that he had no basis for an appeal. This letter would have been received by Goins approximately June 4, 1999, therefore, he exercised "due diligence" under §2244(d)(1)(D). Nothing in the record indicates when Goins received the letter from counsel, but assuming he received the letter two days later, June 4, 1999, the factual predicate of his claim became known to him on June 4, 1999, thus triggering the one-year statute of limitations for filing his habeas corpus petition. Goins filed his Rule 26(B) motion for a delayed appeal on May 8, 2000 which means that 310 days of the 365-day limitations period had expired (the time between June 4, 1999 and the filing of his motion on May 8, 2000). If it were to be ignored of the White precedent and treat Goins' Rule 26(B) application as part of collateral review, as several prior panels of this court have done, then §2244(D)(2) tolled the statute of limitations while Goins pursued his delayed appeal motion.

At the conclusion of Goins' attempted delayed appeal, the statute resumed running and ran until Goins filed his habeas petition on March 26, 2001. In a recent en banc decision, this court held that "under section 2244(d)(2), the statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until the conclusion of the time for seeking Supreme Court review of the state's final judgment on that application independent of whether the petitioner actually petitions the Supreme Court to review the case." Abela v Martin, No. 00-2430, 2003 WL 22398701, at *8 (6th Cir. Oct. 22, 2003)(en banc). In light of Abela, the statute of limitations was tolled for the 90 days during which Goins could have petitioned for certiorari. Thus, the clock ran for 310 days before Goins' delayed appeal and for only 13 days after the expiration of the period for seeking certiorari (from March 13, 2001 until March 26, 2001), for a total of 323 days. Goins' habeas petition was therefore timely even if the court were to consider Goins' Rule 26(B) application as part of collateral review.

Because Goins' habeas petition was timely filed under either §2244(d)(1)(A) or §2244(d)(1)(D), the previously decisions in denying his habeas petition must be reversed and remanded for consideration to reopen on the merits.

Dana Goins, pro se
373-041

32